O

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# VICTORIA DIVISION

| | | |
|---|---|---|
| **BARTON NAGLE** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. V-03-103** |
| | § | |
| **GOM SHELF, LLC** *et al.,* | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM AND ORDER

Pending before the Court are Defendants', Apache Corporation ("Apache") and GOM Shelf, L.L.C. ("GOM"), jointly filed Motions for Summary Judgment (Dkt. ##41, 45, 67).[1] The Court, having reviewed the motions, the responses and supplemental briefing of the parties, and the applicable law, is of the opinion that the motions should be granted in part and denied in part, as set forth below.[2]

### Factual and Procedural Background

Plaintiff Barton Nagle ("Nagle") sued Defendants GOM and Apache for an incident that occurred on or about December 18, 2001, while Nagle was working on the Mustang Island A-16 offshore platform. The platform is located off the Texas coast on the Outer Continental Shelf. Nagle was employed by ARMS, Inc. ("ARMS"), an Apache contractor charged with providing production operators for offshore platforms.

---

[1] Defendants filed their original motion for summary judgment, Dkt # 41, on January 25, 2005. They subsequently filed two supplemental motions for summary judgment, Dkt # 45 and # 67, on February 11, 2005 and April 22, 2005, respectively.

[2] The Court will, for the purposes of this order, address the various motions for summary judgment, and the arguments contained therein, as one motion.

On the date of the incident, Nagle alleges that he and a co-employee, Jason Cowart,[3] were attempting to open a rusty manifold valve to activate the flow of oil and gas to test a separator. Nagle asserts that Paul Romero, Apache's production foreman, contacted Cowart on the platform and ordered him to open the header valves on the platform to test the flow of the well. Nagle further asserts that Cowart had informed Romero on two or three occasions that the platform's valves were rusted, frozen, and needed to be replaced. Nagle asserts that Romero failed to authorize replacement of the valves.

On the date in question, Nagle maintains that Cowart had several conversations with Romero regarding the opening of the valves.[4] In the first conversation, Cowart allegedly told Romero that the valves were frozen and could not be opened. Nagle asserts that Romero ordered Cowart to use grease to try to open the valves. When the valves would still not open, Cowart allegedly called Romero again and received instructions on two separate occasions to "try again". Upon receiving these instructions for a second time, Nagle alleges that he, Cowart and a large worker from the coiled-tubing company attempted to open the valve with a cheater bar provided by Apache to increase leverage. During the course of attempting to open the valve, Nagle asserts that he heard and felt a "pop" in his shoulder. Nagle maintains that he reported the injury to Cowart, who, in turn, reported the injury to Romero.

Nagle maintains that his shoulder pain became progressively worse over the next several days and that, although he initially tried to continue his regular work schedule, work eventually became

---

[3]Cowart has been designated by Defendants as a responsible third party in this lawsuit. *See* Dkt. # 63.

[4]Both parties appear to agree that Nagle did not speak to Romero at any time on the date of the incident. Rather, the only person speaking to Romero was Cowart. Defendant further maintains that Nagle was not in the room with Cowart when the conversations occurred.

physically impossible. On August 29, 2003, Nagle filed his original complaint, asserting that Defendants were negligent and requesting damages for physical pain and suffering, mental anguish, medical expenses and loss of earning capacity.

Defendants' motion for summary judgment maintains that Chapter 95 of the Texas Civil Practice and Remedies Code applies to the case at bar and shields them from liability. Alternatively, Defendants assert that it is entitled to summary judgment under the common law negligence theories because Defendants did not exercise control over Nagle's actions, that premises liability is not an applicable cause of action because the defect was in existence prior to Nagle's entry on the premises, and that if premises liability does apply, the defect was open and obvious and therefore precludes recovery.

## Standard of Review

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Christopher Village, LP v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999). "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). To prevent summary judgment, the non-movant must "respond by setting forth specific facts" that indicate a genuine issue of material fact. *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999).

When considering a motion for summary judgment, the Court must view the evidence in the

light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *See Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998); *Texas v. Thompson*, 70 F.3d 390, 392 (5th Cir. 1995). "The court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). However, the non-movant cannot avoid summary judgment by presenting only "conclusory allegations," or "unsubstantiated assertions," such as the bare allegations of a complaint, but must present sufficient evidence, such as sworn testimony in a deposition or affidavit, to create a genuine issue of material fact as to the claim asserted. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

## Discussion

Generally, a plaintiff in a negligence claim must show that the defendant owed him a duty, the defendant breached that duty, the defendant's breach caused the injury to the plaintiff, and the plaintiff suffered a cognizable injury. *Werner v. Colwell*, 909 S.W.2d 866, 869 (Tex. 1995). Chapter 95 of the TCPRC, passed as a part of the tort-reform legislative package in 1996, restricts this theory of recovery for common law negligence. *Francis v. Coastal Oil & Gas Corp.*, 130 S.W.3d 76, 82 (Tex. App.–Houston [1st Dist.] 2003, no pet.).

Chapter 95 of the TCPRC, entitled Property Owner's Liability for Acts of Independent Contractors and Amount of Recovery, states that

> A property owner is not liable for personal injury, death, or property damage to a contractor, subcontractor, or an employee of a contractor or subcontractor who constructs, repairs, renovates, or modifies an improvement to real property, including personal injury, death, or property damage arising from the failure to provide a safe workplace unless:

4

> (1) the property owner exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress or receive reports; and
> (2) the property owner had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn.

TEX. CIV. PRAC REM. CODE §95.003. Furthermore, the Code clarifies,

> This chapter applies only to a claim:
> (1) against a property owner, contractor, or subcontractor for personal injury, death, or property damage to an owner, a contractor, or a subcontractor or an employee of a contractor or subcontractor; and
> (2) that arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement.

TEX. CIV. PRAC REM. CODE §95.002.

Defendants' motion asserts that summary judgment is proper under all theories because Chapter 95 of the Texas Civil Practices and Remedies Code ("TCPRC") applies to negligent activity and premises defect theories. Additionally, Defendants argue that for liability to attach, the element of "control" is required. Alternatively, Defendants argue that under Texas common law, negligent activity and premises defect related to an independent contractor's work activity also require the element of "control" and, under either the statute or common law, Nagle has not established the element of "control." Finally, Defendants assert that premises defect liability is inapplicable in this case because the defect was in existence when Nagle entered the premises. Assuming it is applicable in this case, Defendants further argue that the defect was open and obvious, thereby entitling them to summary judgment.

In response, Nagle asserts that Chapter 95 is not applicable in this case because Apache was not the "owner or operator," GOM was not the owner of an "improvement," as defined by the statute, and Nagle was not engaged in "repair work." Alternatively, Nagle asserts that if Chapter 95 does apply, the requirements for liability under the Chapter were clearly met in this case.

5

**Owner or Operator**

Nagle first challenges the applicability of Chapter 95 in this case on the grounds that neither GOM nor Apache falls under the definition of "property owner" as the term is defined by the statute. Section 95.001 of the TCPRC defines "property owner" as a person or entity that owns real property primarily used for commercial or business purposes. TEX. CIV. PRAC REM. CODE §95.001(3). With regard to Apache, Nagle argues that, as the manager of the platform, Apache is not covered by the definition of property owner under the statute. With regard to GOM, Nagle asserts that the valve and platform in question are characterized as personal property in the leasehold agreements and that, as such, GOM is not the owner of an improvement to real property as required by the statute.

With regard to Apache, Nagle asserts that Apache is the manager of the platform under a contract. As such, Nagle argues that Chapter 95's definition of "property owner" does not apply to Apache because it is merely a manager rather than an owner or operator of the platform. In *Fisher v. Lee and Chang Partnership*, a Texas appellate court held that Chapter 95 applies to property owners and "also to their agents who oversee their properties." 16 S.W.3d 198, 203 (Tex. App.—Houston [1st Dist.] 2000, pet. denied)(internal citation omitted); *accord Padron v. L&M Properties*, 2003 WL 253927 (Tex. App. Eastland Feb. 6, 2003). The appellant in *Fisher* advanced the same argument asserted by Nagle in the instant case. *Fisher*, however, involved a situation where there was no formal agreement that the non-property owners would manage the property. Rather, it was an informal agreement, and appellant had acknowledged in his pleadings that the non-property owner defendants were agents of the owner. In this case, Nagle has asserted that Apache is the manager of the property and that this agreement has been reduced to writing in the form of a formal contract. As such, there is no question that Apache is at the very least, an agent of GOM's and is therefore entitled to the same protection under the statute as GOM.

Nagle next asserts that GOM is not the owner of "real property" as required by the statute and therefore does not qualify as a "property owner" for purposes of Chapter 95.  Specifically, Nagle argues that the leasehold agreement between OXY USA, Inc. and GOM Shelf transferred only a 50% interest in the oil and gas lease itself and the "personal and moveable property and equipment situated on the land or waterbottoms covered by the Lease."

In *Francis v. Coastal Oil & Gas Corp.*, the plaintiff made an argument similar to the argument advanced by Nagle regarding whether the leasehold owner was an owner of real property.  130 S.W.3d 76, 84 (Tex. App—Houston [1st Dist.] 2003, no pet.)  A Texas appellate court held that Chapter 95 applied to the defendant because the defendant held the mineral leases pertaining to the premises and obtained mineral interests pursuant to those leases.  The court noted that Texas courts have routinely held that a "property owner" includes one holding the mineral leases for the land on which an oil and gas well is located because a mineral lease conveys a fee simple determinable in real property. *Id.*; *see also Jupiter Oil Co. v. Snow*, 819 S.W.2d 466, 468 (Tex. 1991).  The court went on to hold that defendant "was an owner of real property, as contemplated by section 95.001(3), by virtue of its status as lessee." *Id.*

**Improvement**

Nagle further asserts that the valve header on which he was working does not qualify as an improvement because it is personal or moveable property and thus does not qualify as an improvement to real property.  As such, he argues that his injury does not arise from a "condition or use of an improvement to real property" under 95.002(2) or a "personal injury . . . to . . . an employee of a contractor or subcontractor who constructs, repairs, renovates or modifies an improvement to real property." To support this contention, Nagle points to the Operating Agreement and argues that it only refers to the "leasehold and personal property on the operating area."  Furthermore, Nagle maintains

7

that the personal property character of the header itself is evidenced by the federal lease, which required that the platform, including the header valve, be removed after the termination of the lease. Additionally, Nagle argues that the fact that the header valve was removed and replaced after his injury further supports this characterization. Nagle argues that the language contained in the Operating Agreement and the original lease constitute an admission by GOM that the platform and the header valve were personal property rather than real property or an improvement to real property.

The Court believes that Nagle's interpretation of "improvement" too narrowly construes the statute. The improvement to the property in question here is, in the Court's opinion, the well to which the header valve was attached. Texas courts, in interpreting the statute, have, on numerous occasions, found that Chapter 95 applies to situations involving oil wells. *See, e.g.*, *Arsement v. Spinnaker Exploration Co., L.L.C.*, 400 F.3d 238 (5th Cir. 2005); *Credeur v. MJ Oil Inc.*, 123 Fed. Appx. 585, 2004 WL 2914039 (5th Cir. 2004); *Spears v. Crown Central Petroleum Corp.*, 2005 WL 1287050 (5th Cir. 2005)(unpublished); *Francis*, 130 S.W.3d; *Ashabranner v. Hydrochem Industrial Servcs., Inc.*, Civ. No. 14-03-00762-CV, 2004 WL 613026 (Tex. App.–Houston [14th Dist.] 2004, no pet. h.). The Court agrees with these interpretations and finds that the oil well constitutes an improvement to real property for the purposes of Chapter 95.

### Construction, Repair, Renovation or Modification

Nagle next argues that Chapter 95 is inapplicable to the facts of this case because he was not engaged in repair work when the incident occurred. Nagle asserts that he was merely trying to open a valve, and that this does not fall within the plain language of the statute requiring that the injury actually occur in the course of the construction or repair of an immovable.

For purposes of Chapter 95, Texas courts have found that activities facilitating a well's performance qualify as construction, renovation, or modification. *Credeur v. MJ Oil Inc.*, 123 Fed.

Appx. 585 (5th Cir. 2004) (*citing Francis*, 130 S.W.3d at 85.). In *Credeur*, the plaintiff was injured during the course of his employment for a contractor hired to filter mud used for drilling. The Fifth Circuit agreed with the district court's assessment that, although the plaintiff's duties were not specified, his activity fit within the requirements of Chapter 95 because he assisted in the active drilling of the well by filtering mud so that it could be injected back into the well to facilitate further drilling. Likewise, in *Francis*, the court of appeals rejected the plaintiff's argument that the coiled-tubing washout being performed by the plaintiff at the time of his injury did not constitute construction, repair, renovation, or modification under the terms of section 95.002(2). In making its determination, the court noted that the purpose of the coiled-tubing washout was to rehabilitate the well so that the flow of gas could increase. The court, therefore, held that the coiled-tubing washout the plaintiff was performing qualified as either repair or renovation of the well.

Under the circumstances presented here, the Court finds that Nagle was engaged in activity that qualifies as either repair or renovation of a well. The Court notes that a repair or renovation project may be completed in several stages, and that the case law interpreting the statute appears to allow for coverage for activities along any point in the renovation or repair project. *See, e.g.*, *Ashabranner*, 2004 WL 613026 (discussing that plaintiff's injury occurred while he and another employee were working on a heat exchanger to replace a gasket and noting that the gasket replacement itself was part of a larger turnaround process at the refinery whereby worn equipment is replaced.); *Francis*, 130 S.W.3d at 81 (noting that defendant Coastal had formulated an 11- point plan to rehabilitate a particular well that was experiencing flow problems and that plaintiff's injury occurred at step 10 of this plan). In this case, Nagle acknowledges that the valve was to be opened as a means of testing the well's performance.[5] During the course of operations, the platform developed a sanding problem

---

[5] *See* Dkt. # 51 , Plaintiff's Response to the Motion for Summary Judgment, p. 5

9

caused by sand making its way into the production equipment on the platform. A coiled-tubing company was called in to install sand screens in the well to prevent the sand from flowing into the production equipment. After one of the sand screens had been installed, Nagle and Cowart were instructed to open the valve to test the flow of the well. It was during this attempt to test the valve and check the flow of the well that Nagle was injured. The Court, therefore, finds that the attempt to open the valve was connected to the repair or renovation of the well through the installation of the sand screens.

### Control

Having thus determined that Chapter 95 applies to the incident in question, the Court will now turn its attention to Nagle's argument that the requirements for finding liability under Chapter 95 have been met so as to confer liability on Defendants. Nagle argues that there is no dispute that Apache knew of the defective condition of the valve before the injury. Further, Nagle asserts that Apache exercised control by giving the order to open the valve despite its having direct knowledge that the valve was "frozen."

Defendants argue that Apache employee Paul Romero's actions on December 18, 2001 were not enough to constitute an exercise of control over the activities of Nagle and Cowart. Further, Defendants assert that Nagle has provided no evidence that a GOM employee spoke to either Cowart or Nagle, and that Nagle has provided no evidence that GOM knew about the defective condition of the valve or the attempts to open it.

As noted above, in order for a property owner to be liable under Chapter 95, it must be shown that the property manager exercised or retained some control over the manner in which the work was performed, other than the right to order the work to start or stop or to inspect progress or receive reports and that the property owner had actual knowledge of the dangerous condition resulting in the

10

personal injury, death, or property damage and fails to adequately warn. TEX. CIV. PRAC REM. CODE §95.003. Control may be proven in two ways: (1) a contractual right of control or (2) an exercise of actual control. *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex.2002). A right of control is contingent upon the ability to control the means, methods, or details of the independent contractor's work. *Id*. Nagle does not assert that there was a contractual right of control, but rather argues that Apache exercised control through it's employee Paul Romero.

The Court finds that there is a fact issue on the element of control. Apache's view of Romero's conversations with Cowart is that Romero simply told Cowart to open the valve. Nagle, however, asserts that Romero continued to tell them to open the valve after being told that the valve was frozen and that it would not open. To support this position, Nagle asserts that he received instructions from Cowart, who received instructions from Romero as to what steps to take to open the valve, including that they should use grease to attempt to open it, and that they should continue to try even after being told that the grease had not worked. It is unclear, however, from the facts as they have been presented, whether Romero was providing specific instruction as to how the attempt to open the valve should be conducted, or whether he was merely receiving reports as to the progress of the project. As such, the Court finds that summary judgment on this issue is not appropriate.

As to GOM, however, the Court finds that there has been no evidence presented that GOM was involved in or even aware of the well's condition at the time of the incident. Nagle has presented no evidence that GOM exercised any control over the manner in which the attempt to open the valve was made. As such, the Court finds that Defendants' motion for summary judgment as to GOM should be GRANTED.

## CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment is GRANTED as

to Defendant GOM Shelf.  The motion, however, is DENIED as to Defendant Apache Corporation.

It is so ORDERED.

Signed this 24th day of June, 2005.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE